[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action, by summons and complaint, claiming a dissolution of a marriage of the parties and other relief, as on file, came to this court on August 3, 1998, with a return day of August 25, 1998, and thence to later dates, when the parties appeared for a limited contested trial which was heard on July 8, 1999.
The Court, having heard the evidence, finds the following:
The wife, whose maiden name was Renate Betz, and whose prior married name was Renate Straub, was lawfully married to the husband, Kenneth E. Downing, on November 14, 1993 at Brewster, New York. At least one party has resided continuously in this state twelve months next before the date of the filing of the complaint and all statutory stays have expired. The marriage of the parties has broken down irretrievably. No child has been born to or has been adopted by the wife since the date of the marriage.
The wife will soon be fifty-nine years of age, having been born on December 30, 1940. This is her second marriage. She has a high school education and is employed as a hairdresser which she has been doing since 1983. She works part-time approximately three days per week. This has been her schedule for many years commencing before the marriage. She acknowledges that she could get more work days to increase her income, but claims that due to aches and pains and the requirement of standing with arms in the air, she is prevented from working full-time, although she admits to working hard in the yard, using her arms and bending over. She CT Page 13721 has three grown children from a prior marriage, one of whom lived with the parties for a period of time during the marriage.
The husband is sixty and one-half years of age, having been born on March 29, 1939. This is his third marriage. He likewise has a high school (trade school in carpentry) education and has been in the construction business for forty years. He has been employed by his current employer for twelve years and at present is a project superintendent.
The wife and husband have known each other approximately seven years, and shortly before the defendant was to undergo surgery for prostate cancer, they married in November 14, 1993. Although the wife did come to the husband's residence after the surgery to help him and to make sure he was all right, they continued to maintain and live in separate residences. The husband is monitored for his medical condition but requires no treatment at this time.
In August, 1994, the wife sold her condominium. She used all the money she received plus additional funds to purchase a home at 2 Union Circle, Danbury, Connecticut, and pay off some of her husband's loans. Title was placed in the names of the wife and the husband. The husband conceded that he put no money down, but claimed that he contributed much labor in making considerable repairs and improvements to the wife's condominium and to their current residence, and in purchasing a considerable amount of necessary materials.
The wife and her then seventeen year old son moved into the current residence shortly after the purchase in August, 1994, and the wife and husband began to live together when the husband moved in in October, 1994. From the time the husband moved in, he and the wife's son did not get along, although there were no physical altercations between them. In July, 1998, while the wife and husband were on vacation, her son moved out leaving broken glass behind. Shortly thereafter, by complaint dated July 24, 1998, the wife commenced her action for a dissolution of the marriage. Both the wife and the husband continue to reside in the marital domicile and the husband continues to pay the entire carrying costs which he has done from the time of the purchase.
The wife and husband testified to a variety of reasons which caused the breakdown of the marriage. The wife's chief complaint was that her husband consumed excessive amounts of alcohol CT Page 13722 frequently and would yell and scream. The husband attributed some of the breakdown of the marriage to his relationship with the wife's child and to arguments with his wife. The wife and husband still have dinner together at which time both consume some wine. Apparently, there is less arguing and there are no physical altercations. The husband acknowledged that he was more responsible for the breakdown of the marriage, using a figure of 60 percent to 40 percent, which the court is inclined to and does accept.
The husband and wife each claim that the other party is capable of earning sufficient moneys to support himself or herself, and the wife further claims that the husband has the income to contribute to her support by way of alimony.
The husband entered this marriage with prior pension benefits dating from 1987. During the period of the marriage, the benefits continued to accrue. Additionally, the husband has participated in a 401K plan only during the time of the marriage.
The financial affidavits of the parties reveal and the court finds that the husband has approximately $7000 and the wife has approximately $4800 in bank accounts. The court further finds that the wife loaned her daughter $3000 which is still owed to the wife.
The wife and husband each claim that the financial affidavits of the other are not completely accurate, that the income of each party is greater than that shown and that the expenses shown are excessive. The husband further claims that although he continues to pay the entire carrying costs and is under a prior court order to pay and does pay the sum of $462 per week alimony to a former spouse of an approximately fourteen year marriage, his wife's financial affidavit shows her expenses to be almost as much as his.
Both the husband and wife show expenses in excess of their respective income but neither show any liabilities. The only debts shown are those on the motor vehicles and the mortgage on the residence, all of which are less than the value of the asset.
The Court has listened to the parties. The Court has likewise reviewed all of the testimony, the exhibits and the financial affidavits of the parties which reveal their assets, both real and personal as well as their income and earning capacity. The CT Page 13723 Court has likewise reviewed the parties' respective requests for judgment and post trial memoranda. In addition, the Court has taken into consideration all of the criteria set forth in Connecticut General Statutes § 46b-81 (the assignment of property and transfer of title statute) and §§ 46b-82 and 46b-86 (the alimony statutes).
Accordingly, the Court orders as follows:
A decree of dissolution of the marriage shall enter on the ground of irretrievable breakdown of the marriage.
 ALIMONY
The husband shall pay to the wife as alimony, commencing one week from the hereof and weekly thereafter, the sum of $300 per week.
Said alimony shall terminate upon the happening of the first of the following events: (a) the death of either party; (b) the wife's remarriage; (c) the wife's cohabitation under the statute; (d) December 30, 2002.
The amount of alimony and the term thereof shall not be subject to modification.
So long as both parties occupy the marital domicile and the husband continues to pay the carrying costs thereof, he shall be relieved of the obligation to pay alimony.
 REAL ESTATE
The marital residence located at 2 Union Circle, Danbury, Connecticut, shall be immediately placed on the market for sale. If the parties are unable to agree upon the sale price, they shall each select an appraiser for said real property who shall each perform an appraisal. The appraisers shall be permitted to confer with each other but shall not be obliged to do so before submitting their appraisals. The average of the two appraisals shall be the listing price of the property. Either party shall then be permitted to attempt to buy out the other party's interest in said real property.
Upon sale, the following items shall be deducted from the gross sale price: (a) the first mortgage of record; (b) real CT Page 13724 estate broker's commission; (c) attorney's closing fee; (d) conveyance tax, recording fees, and any other normal and customary closing costs.
From the net proceeds of the sale, the wife shall be paid the sum of $60,000. The remaining proceeds shall be divided equally between the parties.
 PERSONAL PROPERTY OTHER THAN PENSION AND DEFERRED COMPENSATION PLANS
Each party shall retain their respective bank accounts shown on their financial affidavits free and clear of any claims the other may have for the same. The husband shall have no claim to any debt that may exist from the wife's daughter to the wife.
The wife shall have the choice of either the 1992 Buick Regal or the 1998 Ford Taurus, and the husband shall promptly convey all of his right, title and interest in the chosen motor vehicle to the wife. In the event she chooses the Ford Taurus, she shall be solely responsible for the automobile loan and any and all other costs associated with said motor vehicle, and shall indemnify and save the husband harmless from same.
The husband shall retain sole ownership of the 1996 Ford pickup and whichever other motor vehicle that is not chosen by the wife.
The husband shall have sole ownership of the Tools of Trade listed on his financial affidavit.
The parties shall have sole ownership of the furniture that each brought into the marriage. They shall equally divide all of the furniture and household possessions which they acquired during the marriage. In the event they are unable to agree concerning the furniture and household possessions, they should return to the Court for further orders in connection therewith.
Each party shall have sole ownership of the life insurance policy listed on the respective financial affidavit.
 PENSION AND DEFERRED COMPENSATION PLANS
The 401K portion of the husband's retirement account shall be CT Page 13725 equally divided between the parties. The remainder of the husband's pension plan shall be divided with 25 percent going to the wife and 75 percent to the husband. A Qualified Domestic Relations Order shall be drafted and implemented, and the Court retains jurisdiction in connection therewith.
 MEDICAL INSURANCE
If the wife does not have medical insurance as an incident of any employment, the husband shall cooperate with the wife to assist her in obtaining medical insurance under COBRA. The wife shall be solely responsible for the payment of the insurance premiums and any unreimbursed medical expense.
 ATTORNEY'S FEES
Each party shall be solely responsible for his or her legal fees.
Morton I. Riefberg Judge Trial Referee